# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:19-cv-141-RJC
## (3:16-cr-83-RJC-1)

| | | |
|---|---|---|
| **DEAN PAUL STITZ,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. (Doc. No. 1). Also pending are Petitioner's Motion for Summary Judgment, (Doc. No. 8), and Respondent's Motion to Stay, (Doc. No. 9).

## I. BACKGROUND

Petitioner was charged by Bill of Information[1] with a single count of knowingly distributing child pornography in interstate commerce by computer in violation of 18 U.S.C. § 2252A(a)(2)(A), (b)(1). (3:16-cr-83 (CR), Doc. No. 1).

While represented by retained counsel, Petitioner agreed to plead guilty to Count (1) and admitted his guilt of that charge. (CR Doc. No. 2 at 1). Petitioner entered into a written Plea Agreement in which he Petitioner acknowledged that the offense is punishable by a minimum of five years and a maximum of 20 years' imprisonment, a $250,000 fine, and supervised release for up to life. (CR Doc. No. 2 at 1-2). The Plea Agreement further states that the Court would consider the advisory Sentencing Guidelines in determining the sentence, that the sentence had not yet been determined, that any sentence estimate was a prediction and not a promise, that the Court would

---

[1] Petitioner waived indictment. (3:16-cr-83, Doc. No. 8).

1

be able to impose any sentence up to the statutory maximum, and that the Court would not be bound by the recommendations or agreements by the United States. (CR Doc. No. 2 at 2). The parties agreed to jointly recommend the following findings with regards to the U.S. Sentencing Guidelines: a base offense level of 22 pursuant to § 2G2.2(a)(2); two levels would be added because the material in question involved prepubescent minors or a minor under the age of 12; two levels would be added because the offense involved distribution other than distribution described in § 2G2.2(b)(3)(A); four levels would be added because the offense involved material portraying sadistic or masochistic conduct or other depictions of violence; two levels would be added because a computer was used for the possession, receipt, and transmission in question; and five levels would be added because the offense involved at least 600 images. (CR Doc. No. 2 at 3). The Government agreed that the plea would be considered timely pursuant to § 3E1.1(b). (Id.). The parties remained free to seek a departure or variance pursuant to § 5C1.1. (Id.).

The Plea Agreement provides that Petitioner stipulated to the existence of a factual basis to support his guilty plea as required by Rule 11(b)(3), that he read and understood the written Factual Basis filed with the Plea Agreement, and that the Factual Basis could be used by the Court and Probation Office to determine the applicable advisory guideline range or the appropriate sentence unless Petitioner reserved the right to object to a particular fact in the Factual Basis itself. (CR Doc. No. 2 at 5). The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty including the right to be tried by a jury, to be assisted by a jury at trial, to confront and cross-examine witnesses, and not to be compelled to incriminate himself. (CR Doc. No. 2 at 6). Petitioner expressly waived the right to contest the conviction and sentence in post-conviction motions and on appeal except for claims of ineffective assistance of counsel or prosecutorial misconduct. (Id.).

The Factual Basis that was filed with the Plea Agreement provides:

> On three separate occasions between May and July 2014, FBI investigators used the ARES file sharing network to connect with an IP address associated with [Petitioner]. During these connections agents were able to download several files that contained child pornography material. FBI agents used the downloaded files and the subscriber information to obtain a search warrant for [Petitioner's] residence.

> On July 29, 2014, the FBI agents executed a search warrant at [Petitioner's] residence. During the execution of the search warrant, agents seized a … desktop computer and a[n] external hard drive from the home. The external hard drive contained 174 child pornography videos and 65 child pornography images. [Twenty-seven] of the videos and 20 of the images depicted children under the age of twelve. [Ten] of the videos and 2 of the images depicted scenes of sadistic or masochistic conduct.

> FBI agents were also able to recover additional evidence after reviewing the hard drive from the … desktop computer. On this hard drive the defendant maintained 126 child pornography videos and 174 child pornography images. [One] image and 2 videos depicted scenes of sadistic or masochistic conduct.
> …

> [Petitioner] elected to speak with the FBI agents following the search of his residence. **[Petitioner] told the agents that he used the ARES file sharing software on his computer to search for child pornography**. [Petitioner] described using specific search terms that would return images of child pornography. **[Petitioner] also acknowledged that he was aware that his computer was sharing some of the child pornography files on the ARES network.**

> The forensic tool Internet Evidence Finder (IEF) utilized by the FBI identified approximately 549 files that were downloaded using the ARES program. Most of the titles for the downloaded files were indicative of child pornography. IEF also identified 305 incomplete files that [Petitioner] attempted to download that had titles associated with child pornography. Investigators were able to determine that the majority of the 149 files that the defendant was sharing on ARES contained titles that were synonymous with child pornography.

(CR Doc. No. 3 at 1-2) (emphasis added).

At a Rule 11 hearing before Magistrate Judge David Cayer, Petitioner stated that he received a copy of the Bill of Information, discussed it with counsel, and understood the charge and his sentencing exposure. (CR Doc. No. 30 at 5). Petitioner acknowledged the rights he was

3

waiving by pleading guilty including the appellate and post-conviction waiver. (CR Doc. No. 30 at 7-8). Petitioner admitted that he read the Factual Basis, understood it, and agreed with it. (CR Doc. No. 30 at 12). He confirmed that he had enough time to discuss any possible defenses with counsel, was satisfied with counsel's services, and was pleading guilty knowingly and voluntarily. (CR Doc. No. 30 at 12-13).

The Presentence Investigation Report ("PSR") calculated the base offense level as 22 for a violation of 18 U.S.C. § 2252A(a)(2)(A) and added the 15 levels for specific offense characteristics consistent with the Plea Agreement. (CR Doc. No. 18 at ¶¶ 18-23). Three levels were deducted for acceptance of responsibility based on the following written admission:

> Around April 2014, I installed the ARES peer-to-peer software and used this to obtain underage pornographic images. At the time of first using the software, I did not attempt to prevent file sharing. **I do understand how and why ARES software made files from my computer available to others** through my IP address and **I take full responsibility for the sharing of files identified in the plea agreement and associated reports/paper work**….

(CR Doc. No. 18 at ¶ 15) (emphasis added). The PSR notes that "Defendant adds that he was not initially aware that the illegal files he was viewing were being shared on his peer-to-peer software; however, **he later became aware that his peer-to-peer programs were sharing illicit files, but he did not discontinue use of the peer-to-peer software at that time.**" (Id.) (emphasis added). Petitioner had zero criminal history points and a criminal history category of I. (CR Doc. No. 18 at ¶¶ 35-36). The resulting advisory guideline range was 151 to 188 months' imprisonment and between five years and life of supervised release. (CR Doc. No. 18 at ¶¶ 69, 72).

Defense counsel filed a Sentencing Memorandum requesting a downward variance pursuant to 18 U.S.C. § 3553(a) because the guideline range was greater than necessary to achieve the purposes of sentencing. (CR Doc. No. 20). Counsel sought a 60-month sentence based on: the mitigating circumstances of the offense; Petitioner's mental and emotional condition and

4

rehabilitation; Petitioner's lack of a criminal history, strong employment record and family ties; the collateral consequences of the conviction and sentence; the low likelihood of recidivism; and to avoid unwarranted sentencing disparities.

At the sentencing hearing, Petitioner stated that he read the PSR, understood it, and had enough time to review it with counsel. (CR Doc. No. 31 at 3). Counsel confirmed that there were no objections to the PSR and that the guideline calculations were correct. (CR Doc. No. 31 at 3-4). In addressing the request for a downward variance, defense counsel conceded that Petitioner "had knowledge" that the material was available to others, but counsel argued that Petitioner's distribution was "a conscious, but a passive activity" in that file-sharing programs contain an agreement that the files will be shared during the installation process. (CR Doc. No. 31 at 25). During his allocution, Petitioner stated that his "intent was never to distribute" but that he "knew what peer-to-peer did." (CR Doc. No. 31 at 34). Petitioner claimed that he "looked for a way to turn [file sharing] off," did not find one, and "foolishly just kept using [the program] for a while." (Id.). Petitioner stated that he eventually saw that a file had been downloaded from his computer at which time he stopped using the program. (Id.).

The Court eliminated the two-level enhancement for the use of a computer because that enhancement "was put in place at the time when the use of the computer was a more significant fact than it appears to be today, with the ubiquitous nature of computer usage…." (CR Doc. No. 31 at 44) see (CR Doc. No. 25) (Statement of Reasons). The Court concluded that a sentence of 121 months' imprisonment was sufficient but not greater than necessary under the circumstances. (CR Doc. No. 31 at 45-46).

In a Judgment entered on November 15, 2016, the Court adjudicated Petitioner guilty and sentenced him to 121 months' imprisonment followed by 15 years of supervised release. (CR Doc. No. 24).

Petitioner argued on direct appeal that the Court erred in finding a factual basis for the plea because peer-to-peer file sharing program is not "distribution" for purposes of § 2252A(a)(2)(A), and that Petitioner lacked the requisite *mens rea*. The Fourth Circuit affirmed, finding that there was sufficient evidence for the Court to find a factual basis to support the "knowing" element of § 2252A(a)(2)(A) and that the use of peer-to-peer file sharing program constitutes "distribution" under § 2252A. United States v. Stitz, 877 F.3d 533 (4th Cir. 2017). The United States Supreme Court denied certiorari April 16, 2018. Stitz v. United States, 138 S.Ct. 1572 (2018).

Petitioner filed the instant § 2255 Motion to Vacate on March 12, 2019. He argues that counsel was ineffective: with regards to the guilty plea by failing to adequately investigating the facts and law and providing misadvice which rendered the guilty plea involuntary; and at sentencing for failing to adequately prepare, conceding the knowledge element, and failing to preserve factual and legal objections.[2] Petitioner asks the Court to vacate the guilty plea.

The Government filed a Response, (Doc. No. 5), arguing that Petitioner failed to show ineffective assistance with respect to his guilty plea or sentencing.

Petitioner has filed Supplemental Filings, (Doc. Nos. 6, 7), in which he argues that counsel has been found ineffective in two other criminal cases,[3] Petitioner's guilty plea was entered due to

---

[2] Petitioner's repetitive and circular § 2255 Motion to Vacate and supporting Memorandum have been restated and condensed. Any argument or sub-claim not expressly addressed in this Order has been considered and rejected.

[3] Petitioner refers to Middle District Case No. 1:15-cv-814 (1:11-cr-127) and Eastern District Case No. 5:15-cv-442 (5:14-cr-15), both of which relate to defendants other that Petitioner. See Jeffries v. United States, 2018 WL 272758 (M.D.N.C. Jan. 2, 2018) (finding ineffective assistance for failure to object to the wrong version of the sentencing guidelines); Tan v. United States, 2017 WL 384317 (E.D.N.C. Jan. 26, 2017) (finding ineffective assistance with regards to a guilty plea).

fear and misadvice, Petitioner suffered a panic attack during the Rule 11 hearing of which counsel was aware and told him to answer "yes" to the Court's questions, and Petitioner would not have pleaded guilty but for counsel's misadvice about the elements of the offense and his sentencing exposure. (Doc. No. 7 at 4). Petitioner also filed a Motion for Summary Judgment, (Doc. No. 8), arguing that the Government failed to respond to all of his allegations in the § 2255 Motion to Vacate and in the Supplemental Filings and that judgment should therefore be granted in his favor.

The Government filed a Motion to Stay, (Doc. No. 9), arguing that the Supplemental Filings and Motion for Summary Judgment are, in essence, out-of-time Replies that are adequately addressed in the Government's Response. However, should the Court consider the *pro se* filing to be a true Motion for Summary Judgment, the Government asks that its consideration be stayed pending consideration of the Government's Response to the § 2255 Motion to Vacate.

## II.      STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

The Rules Governing Section 2255 Proceedings provide that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. Rule 4(b), 28 U.S.C. foll. § 2255. After examining the record in this matter, the Court finds that the argument presented by the Petitioner can be resolved based on the record and

7

governing case law and that no evidentiary hearing is warranted. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). A defendant is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id. Further, knowing and voluntary appellate and post-conviction waivers are generally enforceable. See United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); United States v. Lemaster, 403 F.3d 216, 200 (4th Cir. 2005).

The record reveals that Petitioner's guilty plea was knowingly and voluntarily entered with full knowledge of all of its consequences. Magistrate Judge Cayer conducted a thorough Rule 11 colloquy and concluded that Petitioner was pleading guilty knowingly and voluntarily with a full understanding of his plea's consequences, including his sentencing exposure and the waiver of his appellate and post-conviction rights. Petitioner stated that he was pleading guilty because he was guilty of Count (1), that he had fully discussed any possible defenses with counsel, and that he was satisfied with counsel's services. This freely and voluntarily entered plea waived any non-constitutional errors that preceded it, for instance, Petitioner's belief that he would be released on bond until sentencing which, he learned the night before the Rule 11 hearing, was incorrect. See (Doc. No. 1 at 18).

8

Petitioner appears to argue that counsel provided deficient performance which affected the voluntariness of his guilty plea. The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689).

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007). "Importantly, a petitioner must show both subjectively that he would have gone to trial and that it would have been *objectively reasonable to do so*." United States v. Santiago, 632 F. App'x 769, 773 (4th Cir. 2015); see United States v. Fugit,

9

703 F.3d 248, 260 (4ᵗʰ Cir. 2012) ("what matters is whether proceeding to trial would have been objectively reasonable in light of all the facts.").

With regards to counsel's pre-plea performance, Petitioner contends that counsel failed to adequately investigate the facts and evidence in the case and communicate with him. These claims are refuted by the record and were waived by Petitioner's knowing and voluntary guilty plea. Petitioner admitted that he was guilty of Count (1), that he understood the charges, that he discussed the case and any possible defenses with counsel, and that he was satisfied with counsel's services. Petitioner's knowing and voluntary guilty plea excused counsel from further investigating the case. See Willis, 992 F.2d at 490. Petitioner's conclusory and self-serving contentions to the contrary are rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., Lemaster, 403 F.3d at 221 ("[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'").

Petitioner's assertions that counsel misadvised him about the content of the Factual Basis, failed to adequately review it with him, and pressured him to accept facts that are not true are conclusively refuted by the record. Petitioner stated under oath at the Rule 11 hearing that he read, understood, and agreed with the Factual Basis that was filed along with his Plea Agreement, and that his plea was voluntarily entered. His present self-serving contentions to the contrary will be rejected. See Blackledge, 431 U.S. at 74 ; see, e.g., Lemaster, 403 F.3d at 221.

10

Petitioner suggests that he suffered a panic attack during the Rule 11 hearing, that counsel was aware of his distress, and that counsel instructed him to answer "yes" to the Court's questions. This argument is conclusively refuted by the record. The Rule 11 hearing transcript reflects that Petitioner comported himself appropriately and had a full understanding of the proceedings, and that he answered "no" to some questions. Petitioner responded appropriately to all of the questions during the Rule 11 hearing and unequivocally indicated that his plea was knowing and voluntary. His present attempt to disavow his sworn statements will be rejected. See Blackledge, 431 U.S. at 74 ; see, e.g., Lemaster, 403 F.3d at 221.

Petitioner argues that counsel misadvised him about his sentencing exposure, which rendered his plea involuntary. He argues that counsel told him he would receive a five-year sentence with the plea, that he would receive up to 20 years if he did not accept the plea agreement, and failed to discuss the sentencing guidelines with him. Petitioner's contention that counsel failed to discuss the Sentencing Guidelines with him is conclusively refuted by his Rule 11 statements to the contrary. Further, the Plea Agreement that Petitioner signed and stated in open court that he read and understood, sets forth his sentencing exposure and the effect of the Sentencing Guidelines in determining his sentence. The Plea Agreement also sets forth, in detail, the expected guidelines calculation including enhancements which are reflected in the PSR. The Plea Agreement also states that any sentencing prediction is an estimate, and not a promise, and therefore, even if counsel provided incorrect advice about Petitioner's expected sentence he disavowed any reliance on such advice. Petitioner has failed to demonstrate either deficient performance or prejudice with regards to his pre-plea sentencing advice, and therefore, this claim will be denied.

Petitioner appears to suggest that counsel pressured him to accept the plea by imposing a time limit and advising him, *inter alia*, that if he rejected the offer he would be charged with

additional counts, would likely have to go to trial, and would receive a higher sentence. These allegations are refuted by Petitioner's statements during the Rule 11 hearing that he was pleading guilty freely and voluntarily, that he had adequate time to discuss the case with counsel, and that he was not threatened, intimidated, or forced to plead guilty. Moreover, assuming that counsel told Petitioner that it was in his best interest to accept the plea offer swiftly in order to avoid additional charges, a jury trial, and a higher sentence, Petitioner has failed to explain how that advice was deficient or prejudicial in any way.

Petitioner contends that counsel failed to adequately research the applicable law and provided prejudicial misadvised him about the offense's elements. Petitioner correctly asserts that, at the time of his plea, the Fourth Circuit had not yet addressed whether the use of a peer-to-peer file-sharing program constitutes "distribution" under § 2252A. See Stitz, 877 F.3d at 587. However, several other circuits had uniformly answered the question in the affirmative. See United States v. Shaffer, 472 F.3d 1219 (10th Cir. 2007); United States v. Richardson, 713 F.3d 232 (5th Cir. 2013); United States v. Budziak, 697 F.3d 1105 (9th Cir. 2012); United States v. Chiaradio, 684 F.3d 265 (1st Cir. 2012). Further, the Fourth Circuit had found in an unpublished decision that the use of peer-to-peer file-sharing program constitutes "distribution" for the purposes of § 2G2.2(b)(3)(F). United States v. Layton, 564 F.3d 330, 335 (4th Cir. 2009). Reasonable counsel would have concluded at the time Petitioner was charged that his use of peer-to-peer file-sharing program was "distribution" under § 2252A. Counsel's conclusion was correct, as the Fourth Circuit held on Petitioner's direct appeal that the use of peer-to-peer software constitutes distribution under § 2252A. Stitz, 877 F.3d at 587. Petitioner has failed to demonstrate that counsel's reasonable and correct advice was deficient or prejudiced him in any way.

Petitioner appears to argue that counsel was ineffective for having him initially sign the wrong version of the Plea Agreement, which contained two counts, and that counsel then had him sign the a Plea Agreement that contained only one count and that counsel claimed to be "more lenient" than the first, and which Petitioner claims he did not understand. (Doc. No. 1 at 17-18). The Government has filed the first Plea Agreement that Petitioner signed, which includes: Count (1), transportation of child pornography in violation of 18 U.S.C. § 2252A(a)(1), punishable by a minimum of five years and a maximum of 20 years' imprisonment; and Count (2), possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(A), punishable by a maximum of 10 years' imprisonment. (Doc. No. 5-1). The first Plea Agreement contains the same recommended guideline base offense level and enhancements as the Plea Agreement that was entered with the Court. (Id.). Petitioner has failed to explain how counsel performed deficiently by having him sign a second, more favorable Plea Agreement that replaced Count (1) with an equivalent offense and eliminated Count (2). Nor has he explained how this prejudiced him in any way.

Petitioner appears to allege that counsel was ineffective for failing to negotiate a more favorable plea offer and factual proffer. Petitioner's conclusory contentions that counsel should have achieved a more favorable plea offer and factual proffer is purely speculative. Petitioner has failed to point to any facts demonstrating that, but for counsel's allegedly deficient performance, a more favorable plea offer would have been made by the Government and accepted by the Court. See generally Lafler, 566 U.S. at 164. Therefore, Petitioner's claim that counsel was ineffective for failing to negotiate more favorable terms for his guilty plea will be rejected.

Moreover, Petitioner has failed to demonstrate prejudice. Although Petitioner claims that he would not have pleaded guilty but for counsel's allegedly deficient performance, he has failed to demonstrate that it would have been objectively reasonable to do so. There was strong evidence

of Petitioner's guilt including hundreds of child pornography images, Petitioner's use of a peer-to-peer file-sharing program, and Petitioner's admission to agents that Petitioner knew his computer was sharing some of the child pornography files. Petitioner's entry into the Plea Agreement allowed him to plead guilty to one distribution count, avoid the potential for being charged with more counts,[4] and resulted in a three-level reduction for acceptance of responsibility. Petitioner's § 2255 claims reveal that Petitioner found the Plea Agreement, Factual Proffer, and acceptance of responsibility statement to be distasteful but that he nevertheless pleaded guilty because he feared additional charges, the loss of his acceptance reduction, and a higher sentence. See United States v. Massenburg, 564 F.3d 337, 344 (4th Cir. 2009) (noting that when the case was a "strong one" the court "can legitimately question what [petitioner] would have to gain by going to trial."). Therefore, even if Petitioner could demonstrate that counsel performed deficiently with regards to the plea, he has failed to demonstrate prejudice and his ineffective assistance claim would still be denied.

Next, Petitioner alleges that counsel was ineffective with regards to sentencing. To establish ineffective assistance at sentencing, a petitioner must show that there is a reasonable probability that he would have received a lower sentence but for counsel's deficient performance. See United States v. Rangel, 781 F.3d 736, 746 (4th Cir. 2015). When applying the Strickland prejudice test in the sentencing context, "any amount of actual jail time has Sixth Amendment significance." Glover v. United States, 531 U.S. 198, 203 (4th Cir. 2001).

The main gist of Petitioner's sentencing allegations is that counsel failed to argue that Petitioner lacked knowledge that the peer-to-peer computer program shared files and that counsel conceded the issue at the sentencing hearing without Petitioner's permission. Counsel cannot be

---

[4] See (Doc. No. 5-1).

deemed deficient for conceding the knowledge element and for failing to failing to raise this argument because counsel acted consistently with Petitioner's guilty plea and admissions. Petitioner admitted in the Plea Agreement and at the Rule 11 hearing that he is guilty of knowingly distributing child pornography. He agreed to the Factual Basis which states he "acknowledged that he was aware that his computer was sharing some of the child pornography files on the ARES network" (CR Doc. No. 2 at 2); he stated in his acceptance of responsibility that he "take[s] full responsibility for the sharing of files" (CR Doc. 18 at ¶ 15); and Petitioner stated in open court at the sentencing hearing that he "knew what peer-to-peer did" and used it anyway (CR Doc. 31 at 34). Petitioner's admissions rendered moot the need for any further investigation into areas including Petitioner's computer expertise. Nor was counsel ineffective for conceding the knowledge issue at the sentencing hearing because it was consistent with Petitioner's own admissions. (CR Doc. 31 at 25). Further, reasonable counsel could have concluded that objecting to, or submitting evidence disputing, Petitioner's knowledge would have jeopardized his three-point reduction for acceptance of responsibility. Therefore, to the extent that counsel told Petitioner that his acceptance of responsibility statement and the other sentencing materials should avoid challenging the knowledge element, this advice was not deficient or prejudicial.

Petitioner also criticizes counsel for failing to discuss the Sentencing Memorandum with him and for arguing that Petitioner should receive a downward departure because his file sharing was passive. Counsel acknowledged the knowledge element while arguing that Petitioner's use of a computer was overrepresented in the sentencing guidelines. This approach was reasonable and it met with some success in that the Court reduced the guidelines by two levels and Petitioner received a sentence 30 months below the bottom of the advisory guideline range. Petitioner has failed to allege that any amount of additional factual or legal research, investigation, or discussions

15

with Petitioner or his family would have resulted in a more favorable sentence. Petitioner's self-serving contention that the sentence was unreasonable and based on false and incorrect information is conclusively refuted by the record and will be denied.

Petitioner argues that counsel should have known, prior to sentencing, that Petitioner was dissatisfied with the plea. This claim is too vague and conclusory to support relief in that Petitioner fails to explain what reasonable counsel could have done to assuage Petitioner's alleged dissatisfaction that would not have jeopardized his favorable Plea Agreement, three-level deduction for acceptance of responsibility, and the possibility of a downward departure sentence.

Finally, Petitioner contends that counsel failed to preserve for appeal Petitioner's challenges to the Factual Basis and his knowledge about distribution, which resulted in the Fourth Circuit affirmance based on incorrect, incomplete, and prejudicial facts. Petitioner repeatedly stated, under oath, that he was guilty of knowing distribution. His present self-serving attempts to disavow these admissions are rejected. Petitioner has failed to demonstrate that counsel provided deficient performance in any way or that there was a reasonable probability of a more favorable outcome but for counsel's allegedly deficient performance.

Petitioner's Motion for Summary Judgment, (Doc. No. 8), reiterates Petitioner's § 2255 claims and states no basis for relief. Therefore, Motion for Summary Judgment will be denied and the Government's Motion to Stay, (Doc. No. 9), will be denied as moot.

## IV.     CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's § 2255 Motion to Vacate. Petitioner's Motion for Summary Judgment is denied and the Respondent's Motion to Stay is denied as moot.

**IT IS, THEREFORE, ORDERED** that:

16

1.  Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED**.

2.  Petitioner's Motion for Summary Judgment, (Doc. No. 8), is **DENIED**.

3.  Respondent's Motion to Stay, (Doc. No. 9), is **DENIED** as moot.

4.  **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

5.  The Clerk of Court is instructed to terminate this action.

Signed: November 10, 2020

Robert J. Conrad, Jr.
United States District Judge